MICAH R. JACOBS (State Bar No. 174630)
Email: mjacobs@mbvlaw.com
MBV LAW LLP
855 Front Street
San Francisco, California 94111
Telephone: (415) 781-4400
Facsimile: (415) 989-5143

Attorneys for Plaintiff
MAXIMUM AVAILABILITY LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MAXIMUM AVAILABILITY LIMITED, a New Zealand limited liability company

Plaintiff,

v.

VISION SOLUTIONS, INC., a Delaware corporation; WILLIAM HAMMOND, an Individual

Defendants.

CASE NO. CV-09-5745-CRB

**EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES;**

**[DECLARATIONS OF ALLAN CAMPBELL AND HEATHER JONES FILED SEPARATELY]**

**Date:** TBA
**Time:** TBA
**Judge:** Hon. Charles R. Breyer

**Complaint Filed:** December 7, 2009



MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

TO THE HONORABLE CHARLES R. BREYER, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiff MAXIMUM AVAILABILITY LTD. ("Plaintiff" or "MAXIMUM") hereby applies *ex parte* for a temporary restraining order seeking to immediately stop Defendants VISION SOLUTIONS, INC. ("VISION") and WILLIAM HAMMOND ("HAMMOND") (collectively, "Defendants") from further distributing numerous false and misleading comparative marketing materials about Plaintiff's products and services, and in particular, orders that:

(1) Defendant VISION and its officers, agents, servants, employees, attorneys, successors, assigns, and all others in active concert or participation with VISION, shall immediately cease distribution of the allegedly false and/or misleading statements reflected in the exhibits and materials submitted for this Court's consideration, or any part thereof, in whatever format, including verbal;

(2) Within five (5) business days of the effective date of the Order, VISION shall disclose to Plaintiff a list of all third parties who received any of the allegedly false or misleading statements in any form, either written or oral, which such list shall include the full details (including names and contact details) of each person or entity who received any of the false and/or misleading statements in any format orally or in writing;

(3) Within ten (10) business days of the effective date of the Order, VISION shall deliver all infringing marketing and advertising materials (such as marketing, promotional materials, labels, electronic files including product presentations, etc.) in whatever medium to MAXIMUM along with an affidavit from VISION confirming, under oath, that all copies of any infringing material have been recovered and delivered to MAXIMUM, and that all recipients have been disclosed; and

(4) Within ten (10) business days of the effective date of the Order, VISION shall distribute corrective marketing statements in a form prepared by, or authorized by, MAXIMUM, to all recipients of the information confirming that the information relating to noMAX is

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

incorrect and must be destroyed/deleted, and confirmation of delivery provided to MAXIMUM.

Plaintiff also requests that the Court issue an order for Defendants to show cause, if any they have, as to why a preliminary injunction should not issue enjoining all such false advertising during the pendency of this action.

This application is based upon Sections 34(a) and 43(a) of Lanham Act, 15 U.S.C. § 1125(a), and California Business and Professions Code § 17500, *et seq.,* which authorize the issuance of temporary restraining orders and preliminary injunctions to enjoin false and misleading advertising, and the fact that Defendant HAMMOND authored and Defendant VISION has been disseminating at least two documents (and possibly more) that contain numerous false and misleading statements about Plaintiff and its products and services in the guise of comparative advertisements.

Plaintiff further requests, respectfully, that the Court set the hearing date on the OSC re Preliminary Injunction to proceed on February 19, 2010 at 10:00 a.m., which is the same date and time currently scheduled for this Court to hear and consider the Defendant's respective motions to dismiss and/or transfer venue of this action. Plaintiff proposes that Defendants should file their Opposition papers to the OSC re Preliminary Injunction on or before February 4, 2010, and that Plaintiff shall file its Reply papers on February 12, 2010.

This Application is made on the ground that immediate and irreparable injury will result to Plaintiff unless Defendants' unlawful false advertising is enjoined pending trial. The Application will be based upon the notice contained in this Application, the attached Memorandum of Points and Authorities, the Declarations of Allan Campbell and Heather Jones, which are being filed concurrently herewith, and such other evidence and arguments that may be submitted to the Court at the time of or before this matter is heard.

DATED: January 27, 2010 MBV LAW LLP

By */s/ Micah R. Jacobs*
MICAH R. JACOBS
Attorneys for Plaintiff
MAXIMUM AVAILABILITY LIMITED

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF PERTINENT FACTS ..... 1

A. Competition Between VISION and Plaintiff ..... 2

B. VISION's False and Misleading Comparative Marketing Materials ..... 3

C. VISION's Prior Acts of False Advertising and Unfair Competition ..... 5

D. VISION's False and Misleading Advertisements Have Caused and Are Continuing to Cause Irreparable Harm to Plaintiff ..... 7

III. SUMMARY OF ARGUMENT ..... 8

IV. ARGUMENT ..... 8

A. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS ..... 9

1. Section 43(c) of the Lanham Act Prohibits False Advertising ..... 9

2. Defendants Made False Statements About Plaintiff, a Direct Competitor, in Its Comparative Advertising ..... 10

3. Defendant's False Statements Are Material and Likely to Deceive Purchasers ..... 11

4. Plaintiff Is Likely to Succeed Under California's False Advertising Laws ..... 12

B. PLAINTIFF IS SUFFERING AND WILL CONTINUE TO SUFFER IRREPARABLE HARM AND THE BALANCE OF EQUITIES STRONGLY FAVORS INJUNCTIVE RELIEF ..... 13

C. THE BALANCE OF THE HARDSHIPS FAVORS PLAINTIFF ..... 13

D. AN INJUNCTION SERVES THE PUBLIC INTEREST ..... 14

V. CONCLUSION ..... 14

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

# TABLE OF AUTHORITIES


Page

**CASES**

*BellSouth Telecomms., Inc. v. Hawk Commc'ns LLC*, 2004 WL 1085324, at * 12 (N.D. Ga., Apr. 12, 2004) ... 11

*BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964 (11th Cir. 2005) ... 13

*Cashmere & Camel Hair Mfrs. v. Saks F Ave.*, 284 F.3d 302 (1st Cir. 2002) ... 12

*Castrol, Inc. v. Quaker State Corp.*, 977 F2d 57 (2nd Cir. 1992) ... 12

*Clorox v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000) ... 10

*Cuisinarts v. Robot-Coupe, Int'l Corp.*, 1982 WL 121559, at *1 (S.D.N.Y. June 19, 1982) ... 10

*Energy Four, Inc. v. Dorner Medical Systems, Inc.*, 765 F.Supp. 734 (N.D.Ga. 1991) ... 13

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993) ... 9

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ... 10

*Johnson & Johnson Vision Care v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002) ... 11

*McNeilab, Inc. v. America Home Products Corp.*, 848 F.2d 34 (2nd Cir. 1988) ... 12

*Mutual Pharmaceutical Co. v. Ivax Pharmaceuticals, Inc.*, 459 F.Supp.2d 925 (C.D.Cal. 2006) ... 10

*Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008) ... 10

*Novartis Consumer Health v. Johnson & Johnson*, 290 F.3d 578 (3d Cir. 2002) ... 10

*Pom Wonderful LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS 55426, *28-33 (C.D.Cal. 2008) ... 12

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002) ... 10

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ... 10






MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

*Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush and Co., Inc.* 240 F.3d 832 (9th Cir. 2001) .......... 9

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) .......... 11

**STATUTES**

Lanham Act, § 43(a), 15 U.S.C. § 1125 .......... *Passim*

California Business and Professions Code § 17500 .......... 12

California Business and Professions Code § 17500, *et seq.* .......... 1

**OTHER AUTHORITIES**

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 27:25 (4th ed. 2008) .......... 9

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**I. INTRODUCTION**

Plaintiff MAXIMUM AVAILABILITY LIMITED ("Plaintiff" or "MAXIMUM") hereby seeks a temporary restraining order and a preliminary injunction to immediately stop Defendants VISION SOLUTIONS, INC. ("VISION") and its Director of Product Marketing, WILLIAM HAMMOND ("HAMMOND"), from disseminating any advertisements or marketing materials that contain materially false and misleading statements about Plaintiff, and/or its products and services. Defendants' untrue comparative advertising materials are designed to disparage the Plaintiff's products and reputation in order to gain an unfair competitive advantage and to compete unfairly for prospective customers in the relevant market served by both VISION and Plaintiff.

Plaintiff and defendant VISION are direct competitors. They each sell software systems designed to work specifically with IBM server products to provide business customers with high availability, disaster recovery systems (commonly including the real-time replication of business data from one server / location to another, to enable swift reinstatement of business data should the original site / location subsequently become inoperative).

This action arises out of seriously false and misleading statements distributed by VISION in various of its printed advertising and marketing materials which it distributed and disseminated to its existing and prospective customers through interstate commerce, in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125 and related laws of the state of California, including California Business and Professions Code § 17500, *et seq*.

Plaintiff is a New Zealand limited liability company, with its principal place of business in Auckland, New Zealand. Its sells high-end software technology solutions to customers around the world who want "high availability and disaster recovery" solutions for use with their IBM i servers, to protect and secure their important company data.

Defendant VISION is a Delaware corporation with its principal place of business in Irvine, California. It claims to be "the leading global provider of high availability, disaster recovery and system management software solutions" for certain IBM server systems. As a

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

result of increasing competition (including by the Plaintiff), however, the market share held by VISION has been declining.

Defendant HAMMOND is the Director of Product Marketing for VISION, and he appears to be the author and contact person listed on the two most blatantly false and offending advertising and marketing materials that are at issue in this action.

## II. STATEMENT OF PERTINENT FACTS

### A. Competition Between VISION and Plaintiff.

For the last several years, there has been fierce competition in the market for data disaster recovery software solutions designed to work with certain IBM server systems. See Declaration of Allan Campbell ("Campbell Decl."), ¶¶ 7-9. Defendant VISION is the largest company serving this market. *Id*. at ¶ 7 . As a result of its aging product technology and its reducing market share due to competition, Defendants have increasingly resorted to using unfair and anti-competitive tactics (including the use of the false and/or misleading statements about Plaintiff in its advertising and marketing materials at issue here) to protect its market-dominance and to prevent competitors with superior products and services from increasing their market share, which would necessarily come of the expense of Vision's eroding market share. *Id*. at ¶¶ 7-9. At this time, Plaintiff is acting urgently to stop Defendants from distributing its blatantly false marketing materials.

Plaintiff entered the market in 2000 and offers high-end, high-availability disaster recovery software that in many ways is superior to VISION's older products. Campbell Decl. ¶ 7. Since it entered the market, Plaintiff has enjoyed a growing customer-base and increasing market-share among small, medium and large companies seeking to protect their data with disaster recovery systems designed specifically to work with their IBM systems. *Id.* The market for these products is growing and the companies serving this market are actively and aggressively seeking to maintain and grow their existing customers and to entice new customers by providing better quality, better price or some other value deemed by purchasing customers to be material to their decision to purchase such data recovery software licenses and associated services. *Id.*

While defendant VISION is the oldest and largest seller of such disaster recovery

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

software systems in the world, Plaintiff developed and sells competing software which features a more advanced architecture, and it is one of a handful of companies that are competing with VISION and progressively eroding its share of the marketplace. *Id.* In response, VISION has resorted to disseminating false and/or misleading statements of fact about Maximum's solutions and its products and services in printed marketing materials that directly target and disparage Plaintiff and its products and services. *Id.* at ¶¶ 7-9.

**B. <u>VISION's False and Misleading Comparative Marketing Materials</u>.**

Plaintiff recently discovered that Defendant was disseminating false advertising and marketing materials in interstate commerce. Declaration of Heather Jones ("Jones Decl."), ¶¶ 2-7 and Exh. A. In a document dated June 20, 2009, and entitled *Product Marketing Competitive Brief – Maximum Availability "noMAX*" (the "Competitive Brief"), VISION makes numerous false and/or misleading statements of fact about Plaintiff and its products and its services. See Campbell Decl, ¶¶ 10, 14-25 and Exhs F and G. Plaintiff believes that VISION widely distributed this "Comparative Brief" (Campbell Exhibit A) and/or the false information contained therein to its existing customers and to potential customers in the market for disaster recovery systems designed to work with IBM server models. Jones Decl. ¶¶ 1-7; Campbell Decl. ¶ 17. VISION's "Competitive Brief" makes numerous intentionally false and/or misleading statements of fact disparaging Plaintiff's products and services in violation of the Lanham Act and related state laws. *Id.* at ¶¶ 18-25 and Exh. F. Defendant HAMMOND's name and contact details are included on the document, and the properties field of the document reflects that "hammondw" was the author. Campbell Decl. Exh. A.

The other VISION document at issue here is entitled *Vision HA vs. Maximum Avaialability "noMAX" Product Comparison* (the "Product Comparison") a true and correct copy of which is attached as Exhibit B to the Campbell Declaration. Plaintiff believes that VISION has also been widely distributing its "Product Comparison" in interstate commerce to retain its existing customers (which are increasingly moving over to Plaintiff's products) and to mislead prospective customers. Jones Decl. ¶¶ 2-7; Campbell Decl. ¶ 7. The properties field of this document also shows that it was created on 10 June 2008, and that "hammondw" was the







MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

author. Campbell Decl. Exh. B.

In response to Plaintiff's repeated demands that VISION immediately cease its use of these and other materially false marketing materials, VISION did not deny using and distributing these documents (Campbell Exhibits A and B) to prospective customers and it refused to provide Plaintiff with any assurances that it would stop distributing these false and misleading statements about Plaintiff's products and services. Campbell Decl. at ¶¶ 11-13 and Exhs. D and E. Instead of responding substantively to Plaintiff's various efforts to resolve this without a Court order, VISION went on the offensive and claimed only that its offending marketing materials were confidential and that Plaintiff had no right even to have possession of VISION's unlawful advertisements. *Id.* at Exh. E. Whatever points its argument that its false statements are acceptable so long as they are made in confidence might earn for sheer audacity, or *chutzpah*, the fact is that Defendants have been distributing these blatantly false marketing materials to prospective customers and such conduct is prohibited under the Lanham Act and California's Business and Professions Code. The fact that Defendants tried to conceal its false advertising, rather than running a television commercial, for example, does not excuse or justify such false and misleading statements to prospective customers in its comparative marketing materials.

The numerous false and misleading statements in Defendants' "Competitive Brief" and "Product Comparison" are specifically designed to impact the purchasing decisions of prospective customers by stating, falsely, that Plaintiff's software is "immature," and has inferior product "Functionality," inferior "Reliability," and inferior "Services and Support," among other false statements. *See* Campbell Decl. at ¶¶ 18-25 and Exhs. F and G. For example, VISION brazenly asserts that "over 80 customers have replaced" Maximum's products with Defendant's products. That is an entirely untrue factual statement. *Id.* In fact, the predominant trend is the other way, with more of Vision's customers migrating over to the Plaintiff's systems. *Id.*

Likewise, VISION falsely claims that Plaintiff's products "can take more than 30 days [to install and train] because of the custom coding and testing." This is also literally false (installs typically take mere days or hours) but this false information will influence purchasing decisions. Campbell Decl. ¶ 23.

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

Defendant VISION also falsely describes Plaintiff's customer support services to mislead potential purchasers into believing that Plaintiff is a one or two person company operating out of a basement in New Zealand with insufficient support staff. Campbell Decl. ¶ 24 and Exhs. F and G. In truth, Plaintiff offers world-wide support, and has support staff in the United States, the United Kingdom, Japan and New Zealand. *Id*. Plaintiff's commitment to support is second to none, and Plaintiff's support staff can be contacted by telephone or email directly at any time, day or night, 24x7. Plaintiff's support staff have and continue to provide full support to the hundreds of companies using Plaintiff's products and services in over 30 countries throughout the world. *Id*.

VISION repeatedly, dramatically and materially misrepresents the core characteristics and capabilities of Plaintiff's software systems in a deliberate effort to deceive and induce customers and prospective customers not to purchase Plaintiff's competing products, in violation of the Lanham Act and related state law claims. Plaintiff has only recently discovered these two false marketing documents despite Defendants' efforts to conceal them from Plaintiff because a prospective customer had the courtesy of sending VISION's marketing materials to Plaintiff's representative. *See* Jones Decl. ¶¶ 2-6 and Exh. A. For purposes of this application, the Court should presume that Defendant has distributed and continues to distribute these and other materially false statements. These false statements are designed to be material and to negatively influence purchasing decisions. As such, they are presumed to irreparably harm Plaintiff's reputation. Plaintiff believes that it has already incurred actual harm and significant lost profits as a result of Defendants' false advertising and unfair competition, but only through expedited discovery will Plaintiff be able to discover the full scope of irreparable and monetary harm caused by Defendants.

**C. <u>VISION's Prior Acts of False Advertising and Unfair Competition</u>.**

This is not the first time that VISION has resorted to unfair and anti-competitive behavior to preserve its reducing market share. Campbell Decl. ¶¶ 26-30. In addition to the recently discovered "*Product Marketing Competitive Brief – Maximum Availability *noMAX*" (Exhibit A) and "*Vision HA vs Maximum Availability *noMAX Product Comparison*" (Exhibit B), discussed







MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

above, VISION distributed false and/or misleading statements about Plaintiff on (at least) two prior occasions.

In or around June 2006, for example, VISION created and distributed a high availability product comparison spreadsheet entitled "*Echo2 Competition Comparison,*" which claimed to compare the key product features of six high availability / disaster recover (HA / DR) software products available in the IBM System-i server market for the United States. Campbell Decl. ¶26 and Exh. H. Metadata embedded in this spreadsheet identifies "Vision iTERA" as the authoring company of the false and misleading information. VISION provided this spreadsheet to its software reseller, BCS Group Inc, which then used the spreadsheet in an attempt to entice Plaintiff's reseller to stop reselling Plaintiff's products and services. This document falsely claimed that Plaintiff's software had inferior functionality, and lacked "*user profiles*", journal based "*data areas*" and "*data queues*". In fact, Plaintiff's software included those features at the time of creation of the offending spreadsheet. The spreadsheet Exhibit C also falsely represents the characteristics and capabilities of Plaintiff's product *noMAX in a deliberate effort to deceive and induce the public not to purchase Plaintiff's software. *Id.*

Similarly, in March 2008, Plaintiff discovered that VISION had created and distributed a document entitled "*Spring 2008 PartnerWire Bulletin*" and "*CBSI Case Study*", in which it made several false and misleading statements regarding Plaintiff's product *noMAX. Campbell Decl. ¶¶ 27-29 and Exh. I. The *PartnerWire Bulletin* falsely describes a CBSI Case Study by claiming sub-standard performance of *noMAX and falsely describes CBSI's subsequent implementation of VISION's competing software product. The false and misleading statements were designed to mislead the readers into believing that *noMAX was an inferior software product. Under the heading "*This Partner Said "No" to *noMAX,*" VISION falsely stated:

- "*With its highly complex role-swap process, the *noMAX solution was not meeting CBSI's high standards*".

The President of CBSI (Randy Downing) has confirmed in writing to Plaintiff that the above comments in question were unauthorized, and the Case Study it had provided to VISION was **not** a reference to *noMAX. The software product described in the Case Study was in fact

CBSI's own earlier proprietary "SOR" software. *Id.*

VISION wrongfully attributed the comments in the Case Study to *noMAX when it actually referred to a different product to encourage its business partners (to whom the *PartnerWire Bulletin* was widely distributed) to actively propagate such false and defamatory information to potential purchasers, with the intention of influencing the purchasing decisions of customers and potential customers in the HA/DR market. The *PartnerWire Bulletin* then concluded:

- *And if you'd like to learn more about how to replace *noMAX in your territory, or about adding hosted DR to your offerings, contact your Vision Solutions rep or e-mail me at bob.johnson@visionsolutions.com*

Plaintiff's New Zealand attorneys, Clendons, wrote to VISION on 26 March 2008 seeking (amongst other things) immediate assurances that the *PartnerWire Bulletin* would be withdrawn. No reply was received. Campbell Decl. ¶ 30 and Exh. J.

**D. <u>VISION's False and Misleading Advertisements Have Caused and Are Continuing to Cause Irreparable Harm to Plaintiff</u>.**

Defendant VISION's use of the afore-mentioned advertisements and marketing materials to convey that Plaintiff's products are immature, unreliable, not adequately supported and lacking important functionality, among other false statements, and its efforts generally to portray Plaintiff's products and services as inferior by making false and/or misleading statements about cure features of Plaintiff's products and services that are designed to and will negatively influence the purchasing decisions of customers or prospective customers.

Unless enjoined, Defendants will continue to irreparably injure Plaintiff's goodwill and market position and will cause significant damages. In addition to an immediate injunction, Plaintiff seeks an order requiring VISION to immediately identify each and every customer, prospective customer, and any other persons or entities who received a copy of any of the offending materials (or received the information contained therein in any form or manner, including verbally), and that VISION also immediately distribute corrective advertisements and notices (in approved form) that retract all false and misleading information distributed to date.

///



MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

## III. SUMMARY OF ARGUMENT

Plaintiff is entitled to preliminary injunctive relief because: (1) Defendants' "Competitive Brief" and "Product Comparison" contain blatantly and materially false and misleading statements that will mislead and confuse the relevant purchasing customers in the market for "disaster recovery" software; (2) the parties are direct competitors and Defendant's comparative marketing materials expressly reference Plaintiff and its products, and thus courts presume irreparable harm to Plaintiff's *noMAX brand and goodwill, loss of sales and harm to Plaintiff's ability to maximize its market position through fair competition; (3) Defendants will not suffer any hardship because the requested injunction will simply prevent Defendants from committing acts of false advertising and unfair competition already prohibited by state and federal law; and (4) an injunction will protect the relevant purchasing public from being misled in their purchasing decisions.

Plaintiff will continue to suffer irreparable harm to its goodwill and ability to compete fairly and lawfully based on its outstanding products and services, unless this Court issues urgent injunctive relief. Plaintiff is not only losing sales and goodwill to its *noMAX brand, but is being denied the full market position by VISION, which has increasingly relied upon false advertising to preserve its majority market share and stifle competition.

The balance of hardships also tips in Plaintiff's favor. Whereas the denial of an injunction would continue to subject Plaintiff and the public to false advertising and unfair competition, granting an injunction merely prevents Defendants from using misleading advertising and other tactics to compete unfairly. They are not lawfully entitled to compete by making false and misleading statements about Plaintiff's products and services.

For these reasons, Plaintiff requests a preliminary injunction requiring Defendants to cease and desist from the unlawful acts detailed herein, and to issue immediate corrective advertising in approved form.

## IV. ARGUMENT

The Ninth Circuit has provided varying descriptions for what is required to obtain a preliminary injunction. In some instances, the Ninth Circuit has required a moving party to

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

prove: (1) a likelihood of success on the merits; (2) irreparable injury if the injunction is denied; (3) that the balance of potential harm favors the movant; and (4) whether the public interest favors granting an injunction. *See, Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). In other instances, the Ninth Circuit has used a condensed "alternative standard" requiring a moving party to demonstrate *either*: "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tops sharply in favor of the moving party." *Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839-840 (9th Cir. 2001). Under either standard, Plaintiff should prevail here.

### A. <u>PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS</u>.

#### 1. Section 43(c) of the Lanham Act Prohibits False Advertising.

Section 43(a) of the Lanham Act is designed to protect both consumers and competitors from false advertising. Section 43(a) of the Lanham Act provides, in relevant part:

> "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any … false or misleading representation of fact, which --
>
> ***
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Section 43(a) of the Lanham Act offers broad protection against false advertising. As such, Section 43(a) vindicates a consumer's right to be told the truth, *as well as* a competitor's right to fair tactics in the marketplace. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 27:25, at 27-47 – 27-48 (4th ed. 2008) (emphasis added).

To prove false advertising under Section 43(a) of the Lanham Act, a plaintiff must show: "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is



MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

material [in that it is likely to influence purchasing decisions]; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)).

**2. Defendants Made False Statements About Plaintiff, a Direct Competitor, in Its Comparative Advertising.**

The first and second elements of Plaintiff's Lanham Act claim are satisfied by a showing that VISION's comparative marketing materials are literally false – either expressly false or literally false by necessary implication – even without evidence of consumer deception. As set forth in the Campbell Declaration, ¶¶ 10-25 and Exhibits F and G thereto, Defendants' advertising materials make numerous literally false statements.

A plaintiff may establish the falsity of a statement "either by showing that, in context, the statement 'was literally false, either on its face or by necessary implication,' or by showing that although the statement was 'literally true' it was nonetheless 'likely to mislead or confuse consumers' as evidenced by consumer surveys." *Mutual Pharmaceutical Co. v. Ivax Pharmaceuticals, Inc.*, 459 F.Supp.2d 925, 932 (C.D.Cal. 2006) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139-1140 (9th Cir. 1997)). Where a statement is "literally false, a violation may be established without evidence of consumer deception." *Id.* at 933 (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002).

A "literally false" message may be either explicit or "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis Consumer Health v. Johnson & Johnson,* 290 F.3d 578, 587 (3d Cir. 2002) (citing *Clorox v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000)); *see also, Cuisinarts v. Robot-Coupe, Int'l Corp.*, No. 81-731, 1982 WL 121559, at *1 (S.D.N.Y. June 19, 1982) (holding that an advertisement need not assert a message "in *haec verba*" where the language and visual content of the advertisement is the "practical,

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

grammatical, syntactical equivalent" of the message conveyed); *BellSouth Telecomms., Inc. v. Hawk Commc'ns LLC*, No. 04-280, 2004 WL 1085324, at * 12 (N.D. Ga., Apr. 12, 2004) (finding an advertisement depicting the defendant, a dial-up Internet service provider, winning a race against the plaintiff, a DSL Internet service provider, and including the tag line "experience DSL speed with Joi Express," literally false by necessary implication).

In *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007), the Second Circuit held that an advertisement including the phrase "settling for cable would be illogical," when viewed in the context of the advertisement's subsequent praise for the "amazing picture quality of DIRECTV HDTV" and reference to an "HD picture that can't be beat," necessarily implied the false message that the plaintiff cable provider's transmission of HDTV was inferior to that of the defendant, DIRECTV.

**3. Defendant's False Statements Are Material and Likely to Deceive Purchasers.**

To succeed on the third element of a claim under the Lanham Act, "the plaintiff must establish that the defendant's deception is likely to influence the purchasing decision." *Johnson & Johnson Vision Care v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) (internal citations omitted). A plaintiff may satisfy the materiality requirement "by proving that the defendants misrepresented an inherent quality or characteristic of the product." *Id.*; *see also, BellSouth Telecomm., Inc. v. Hawk Comm., LLC*, No. 04-280, 2004 WL 1085324, at *13 (N.D.Ga. Apr. 12, 2004) (finding a defendant's "DSL speed" claim has "a material effect on consumers' purchasing decisions" because "speed is an inherent quality or characteristic of Internet service that is likely to influence consumers' decisions regarding which Internet service to purchase from which provider").

As set forth in the Campbell Declaration, Defendant's false statements portraying Plaintiff's products as being immature, lacking existing functionality and without customer support are precisely the type of false statements that are designed to and will influence purchasing decisions. Likewise, the false statement that over 80 customers have terminated their relationship with Plaintiff and switched to Defendant is false and likely to influence purchasing

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

decisions. Finally, the untrue statements about Plaintiff's customer service is a key consideration for decision-makers who purchase these systems. Campbell Decl. ¶¶ 17-25 and Exh. F and G.

When an advertisement conveys a literally false message, either expressly or by necessary implication, as VISION's comparative marketing materials at issue here do, courts presume that consumers have been deceived. *Cashmere & Camel Hair Mfrs. v. Saks F Ave.*, 284 F.3d 302, 314 (1st Cir. 2002) ("Common sense and practical experience tell us that we can presume, without reservation, that consumers have been deceived when a defendant has explicitly misrepresented a fact that relates to an inherent quality or characteristic of the article sold. To presume as much requires neither a leap of faith nor the creation of any new legal principle.").

As stated in *McNeilab, Inc. v. America Home Products Corp.*, 848 F.2d 34 (2nd Cir. 1988):

> This case, by contrast, presents a false comparative advertising claim … a misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer … consequently the district court did not err in presuming harm from a finding of false or misleading advertising.

*Id.* at 38; *see also, Castrol, Inc. v. Quaker State Corp.*, 977 F2d 57, 62 (2nd Cir. 1992) ("We will presume irreparable harm where plaintiff demonstrates likelihood of success in showing literally false defendant's comparative advertisement which mentions plaintiff's product by name.")

**4. <u>Plaintiff Is Likely to Succeed Under California's False Advertising Laws</u>.**

Defendants' false and misleading statements purporting to compare their products and services with those of Plaintiff also violate California's false advertising statute, which prohibits the dissemination of any untrue or misleading statement in connection with the sale of goods. Cal. Bus. & Prof. Code § 17500. To sustain a claim under California's false advertising statute, Plaintiff needs only show that "members of the public are likely to be deceived" by Defendants' representations. *See, Pom Wonderful LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS 55426, *28-33 (C.D.Cal. 2008). Plaintiff need not allege "actual deception, reasonable reliance, [or] damage." *Id.* The false and misleading statements prohibited by the Lanham Act, discussed i*nfra*, are similarly prohibited under California's false advertising statute.



MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

**B. PLAINTIFF IS SUFFERING AND WILL CONTINUE TO SUFFER IRREPARABLE HARM AND THE BALANCE OF EQUITIES STRONGLY FAVORS INJUNCTIVE RELIEF.**

By making misleading claims specifically about Plaintiff in its comparative side-by-side marketing materials, VISION has stepped outside the boundaries of legitimate and fair competition. Once a plaintiff shows that a direct competitor's comparative ads mislead consumers and affect their purchasing decisions, the likelihood of injury is presumed. *Energy Four, Inc. v. Dorner Medical Systems, Inc.*, 765 F.Supp. 734 (N.D.Ga. 1991) ("Misleading comparative claims deprive a plaintiff of a legitimate competitive advantage and reduce a consumer's incentive to purchase the plaintiff's product. Given the intense and direct competition between the parties, it is clear that the court may presume that any false or misleading statements made by either party will injure the other"). Moreover, it is well settled that the loss of customers and goodwill is an irreparable injury. *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (loss of customers and goodwill constitutes irreparable harm).

Plaintiff will continue to suffer irreparable harm if this Court does not enjoin Defendants from deceptively marketing its products. As described earlier, the Defendants have mislead consumers into concluding that Plaintiff's products are immature with limited functionality and are inadequately supported (all plainly untrue). *See* Campbell Decl. ¶¶ 10-25. If Defendants are permitted to continue marketing, distributing and selling their products through such deceptive comparative claims means, Plaintiff may never successfully eliminate the confusion, loss of goodwill or lost sales caused by Defendants' false and misleading statements. Enjoining Defendants' unlawful activities is the only remedy capable of curtailing the ongoing irreparable harm to the Plaintiff. *Id.* at ¶¶ 31-32.

**C. THE BALANCE OF THE HARDSHIPS FAVORS PLAINTIFF.**

The balance of hardships supports the issuance of an injunction because the requested injunction would merely bar Defendants from using misleading marketing and distribution tactics to stifle competition through false, misleading and harmful statements about Plaintiff and/or its products and services. Plaintiff is estimated to control approximately 5% of the global market of

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

IBM System-I users that have purchased HA/DR software, while Defendant is estimated to control approximately 90% and, thus, Defendant is in a position to distribute these blatantly false statements to a wide audience and prejudice Plaintiff's ability to compete fairly for market share.

**D. AN INJUNCTION SERVES THE PUBLIC INTEREST.**

As noted above, the Lanham Act protects the public's right not to be subjected to false advertising, and purchasers of HA/DR software should expect fair and honest comparative advertising so that they can base their purchasing decisions on truthful information.

## V. CONCLUSION

Plaintiff respectfully requests that this Court issue a temporary restraining order and/or a preliminary injunction ordering Defendants to immediately cease and desist from distributing such false and misleading statements, as described herein, and to take certain corrective actions immediately to curtail the confusion among consumers, as set forth in detail in the accompanying Proposed Order.

DATED: January 27, 2010 MBV LAW LLP

By *_/s/ Micah R. Jacobs_*
MICAH R. JACOBS
Attorneys for Plaintiff
MAXIMUM AVAILABILITY LIMITED